PEDRO PEPÍN DELGADO, ETC., Plaintiff, Appellee-Appellant, *v.* READY-MIX CONCRETE, INC., and MARYLAND CASUALTY COMPANY, Defendants, Appellants-Appellees.

No. 10006. Argued November 18, 1949.—Decided January 10, 1950.

*F. Prieto Azúar* for appellants–appellees. *F. Fernández Cuyar* for appellee–appellant.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The plaintiff as well as the defendants have appealed from the judgment rendered by the District Court of San Juan ordering the latter to pay to the former the sum of $5,000 for damages, plus costs and $500 as attorney's fees. Since plaintiff's appeal is confined to maintaining that the amount awarded as compensation and as attorney's fees is exceedingly low, while that of the defendants challenges the judg-

ment as a whole, we shall discuss first the errors assigned by the latter.

██ Upon the case being called for trial on November 9, 1948, the defendants moved the court for the dismissal of the complaint because the plaintiff had not answered the interrogatory served on him. The court refused to do this, or to grant a continuance. These refusals gave rise to the first assignment of error. It appears from the record that on October 18, 1948 the defendants filed in the office of the clerk of the lower court an interrogatory addressed to the plaintiff. At the commencement of the trial the defendants maintained that they had served by mail said interrogatory on the plaintiff who insisted that he had not received it, although he remembered having met by chance the attorney for the defendants and having talked about it and pointed out to him that he would attend to it as soon as he saw it and as soon as he got ready to prepare the case for trial. We do not believe that the error charged was committed. Interrogatories to the parties are authorized by Rule 33 of the Rules of Civil Procedure. They must be answered separately and fully, in writing and under oath, within fifteen days after delivery thereof. The deponent may make objections to such interrogatories within ten days after service thereof, the answers being deferred until the objections are determined by the court. Rule 37 (a) provides, on the other hand, that upon the refusal of a party to answer any interrogatory submitted under Rule 33, the proponent may apply to the court for an order compelling the deponent to answer; Rule 37 (b) provides that if a party refuses to answer a question after being directed to do so by the court, such refusal may be considered as a contempt of court; and Rule 37 (d) provides that if a party "wilfully. . . fails to serve answer to interrogatories submitted under Rule 33, after proper service of such interrogatories, the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or

enter a judgment by default against that party." (Italics ours.) In the present case, however, the fifteen-day period referred to by Rule 33 expired several days before the date set for the trial to begin. Nevertheless, the defendants did not act immediately after said term expired and delayed their motion until the very moment that the case was called for trial. We do not think that in so acting the defendants were diligent, nor that the record shows that the plaintiff *wilfully* failed to answer the interrogatories which the former alleged having served by mail on the plaintiff and which the latter repeatedly insisted he had not received.

It is also evident from the record that after the complaint was filed on December 8, 1947, the defendants filed, seven days later, a motion requesting a bill of particulars and that said motion was denied in a lengthy order dated the following February 9 and that it is therein clearly suggested to the defendants to resort to the discovery of evidence, examination of witnesses and parties or to interrogatories,[1] which procedures, it was the trial court's belief, had substituted the bill of particulars currently used prior to the effective date of the rules. Nevertheless, it was not, as we have already said, until October 18, 1948 that the defendants filed their aforesaid interrogatory. It likewise appears from the record that although the trial began on November 9, said trial, after most of plaintiff's witnesses had testified and part of defendants' evidence had been presented, was postponed for three days later. During that interval the defendants could easily have obtained from the court an order to subject the plaintiff to a physical examination,[1a] being thus able to get ready, if they wished, to controvert the expert testimony introduced by the plaintiff to the effect that he suffered from epilepsy and the other ailments mentioned in the evidence already presented.

---

[1] See *Canino v. Court of Eminent Domain, ante,* p. 141.
[1a] See Rule 35 and *Bahr v. American Railroad Co.,* 61 P.R.R. 885.

In construing Rule 37 in *Valenstein* v. *Bayonne Bolt Corp.*, 10 Fed. Rules Serv. 696, it was stated that "It is clear that a broad discretion is vested in the court within the bounds of Rule 37 to make whatever disposition is just in the light of the facts of the particular case."

We consider that in the light of the facts arising from the record the lower court acted correctly.

■■ On the other hand, the court *a quo* did not err either in refusing to grant a continuance. When the defendants prayed for a continuance, the plaintiff objected and stated that on behalf of the former the case had been continued on previous occasions, that its witnesses were in the courtroom and that since they were poor a new continuance would represent expenses and troubles. Defendants' petition was denied and the trial started forthwith. During the course thereof the defendants repeatedly insisted on their motion to dismiss or to continue the case. However, continuance of a trial is a matter which rests on the sound discretion of the lower court and we will not disturb the order rendered thereunder, unless we are convinced that in so acting there was abuse of such discretion. *Coll* v. *District Court*, 68 P.R.R. 114; *Amy* v. *District Court*, 59 P.R.R. 658; *López* v. *Flores*, 50 P.R.R. 575; *Pontón* v. *Succrs. of Huertas González*, 42 P.R.R. 511. It has not been shown that such abuse existed here.

■ Secondly, the defendants charge the trial court with having committed an error gravely prejudicial to them in deciding that the preponderance of the evidence favored the plaintiff and in not holding, at least, that the latter was guilty of contributory negligence. Plaintiff's evidence tended to show that on May 23, 1947, sometime between half past twelve and one in the afternoon, the plaintiff minor was riding a bicycle on Borinquen Avenue in Barrio Obrero, in Santurce, toward a place known as "Las Monjas," where he lives, after getting a nut which the owner of a bicycle agency had

asked him to buy; that upon crossing the intersection formed by "Haydée Rexach" Street with said avenue, the plaintiff, who was going slowly on his bicycle, met with a small truck parked in front of the grocery store-warehouse Camacho; that when passing by the truck he heard a noise which happened to be made by the truck of the defendant Ready-Mix Concrete, Inc. and that at that same moment the plaintiff was hit by this latter truck, having to be taken immediately to the Municipal Hospital in Santurce, wherein he was operated on and received medical treatment, and that as a result of the accident the plaintiff is now completely disabled. Defendants' theory, according to the evidence introduced, was to the effect that while the truck of the Ready-Mix was moving along the avenue referred to, slowly and taking all necessary precautions, upon reaching the intersection formed by said avenue with "Haydée Rexach" Street, the plaintiff suddenly started on his bicycle from that street and that when the plaintiff swerved to his left side because of a truck that was parked on the right side, plaintiff hit the truck of the Ready-Mix Concrete, Inc., the accident thus ensuing. The lower court, in its statement of the case and opinion made, among others, the following findings:

"The defendant Ready-Mix Concrete, Inc. is the owner of truck H–5675, which it uses, together with many others, in the operation of its business of selling mixed concrete. On May 23, 1947, between twelve a.m. and one p.m., said truck was driven by Julio Castro Rivera, an employee of said enterprise who was at that time acting within the scope of his employment.

"On said day the plaintiff had gone bicycle-riding to buy a nut in an agency which hired bicycles situated alongside the establishment 'La Hípica,' on one of the cross streets of Borinquen Avenue, in Barrio Obrero, and at about half past twelve in the afternoon he was returning to his house situated in a place called 'Las Monjas' in Hato Rey. Immediately after crossing the intersection formed by Borinquen Avenue and Haydée Rexach Street, while passing a truck parked to his extreme right in front of the Camacho Grocery Store or Warehouse,

the plaintiff was hit by the truck of the Ready-Mix Concrete Inc., which was coming behind the bicycle in the same direction as the latter, to wit, from west to east.

"At the time of the accident there was no traffic in said section of Borinque Avenue, outside of the defendant's truck, plaintiff's bicycle and the parked truck. To the left side of defendant's truck, when it started to pass the bicycle, there was enough free space for at least two trucks more. Nevertheless, defendant's truck passed the bicycle so close to it that, with some sort of contrivance on its right rear end, probably the canal used to pour the mixed concrete, it collided with the plaintiff's body, hitting him on the left side of the head and throwing him to the ground together with the bicycle, and was unable to stop until it reached a mango tree, on the left side of the avenue, at approximately 50 yards from the place of the accident.

"Upon crossing the intersection of streets already mentioned, the driver of defendant's truck did not sound his 'claxon,' nor any other warning signal, despite the fact that said truck was being driven at a dangerous speed (from 20 to 25 miles an hour) considering its size, machinery and weight, and especially considering the fact that it was passing the cyclist and the parked truck.

"Defendant's truck hit the plaintiff because he unnecessarily wanted to pass too close to the bicycle, leaving so short a space between the moving truck and the parked truck, that it trapped the bicycle between both vehicles."

A careful reading of the transcript of evidence has convinced us that the lower court was correct in its findings. *Jiménez* v. *Fletcher*, 67 P.R.R. 153; *Robles* v. *Guzmán*, 67 P.R.R. 671. Neither was the second error assigned committed.

■ The sixth paragraph of the complaint alleges that the truck which caused the damages "was insured by the defendant Maryland Casualty Co., which had issued a policy. which was in effect at the date of the accident, covering the risk of damages to third persons." In the answer filed by the defendants they "admit that the Maryland Casualty Co. issued the policy mentioned in clause 6 of the complaint, but they affirmatively contend that said policy was issued for

the benefit of the codefendant Ready-Mix Concrete, Inc. and not for the benefit of third parties." There is no doubt that under our law the party taking the affirmative in a question must establish it by means of evidence. Nevertheless, since plaintiff's contention to the effect that the truck of the defendant Ready-Mix was insured with the Maryland Casualty Co. was admitted by the defendants, the former was relieved from offering evidence to that effect, it then being incumbent on said defendants to establish their contention that the policy in question was not issued for the benefit of third parties. *Freiría & Co.* v. *Cortés Brothers & Co.*, 32 P.R.R. 117. Inasmuch as the defendants did not present any evidence whatsoever to support their afore-mentioned defense, the lower court did not err in making the defendant Maryland Casualty Co. solidarily responsible for the judgment rendered.[2]

When nearing the end of the trial, the defendants asked the court to make an inspection and the latter agreed. Said inspection was performed, but it does not appear from the record that the parties were present thereat nor that it was reduced to writing. The lack of a written report and the fact that the result of the inspection was not set forth in the opinion rendered gave rise to the fourth assignment of error. Nevertheless, said error is nonexistent. If the defendants deemed that a written report should be made, it would have been easy for them to request the lower court to make it. On the contrary, they raise the question now before us for the first time. This Court has repeatedly held that when an inspection is made the better practice is to reduce it to writing, that when said requisite is not complied with the party which may be prejudiced may ask the lower court to do it and that in the absence of such request, or of a showing to the effect that the error which might have

---

[2] See § 175 of Act No. 66 of 1921 (Sess. Laws, p. 522), as amended by No. 19 of April 15, 1929 (Sess. Laws, p. 160).

been committed in not making a written report was prejudicial, the judgment rendered will not be reversed because of that omission. *Lampón v. Línea Romero*, 60 P.R.R. 207; *Figueroa v. Vives & Maxan*, 46 P.R.R. 233, 235; *Heirs of Rivera v. González*, 33 P.R.R. 973; *Lamboy v. Solo et al.*, 29 P.R.R.843. There is no showing here to the effect that a similar request was made nor that the absence of such a report was an error prejudicial to the defendants.

 The fifth and last error assigned by the defendants is to the effect that the lower court erred in ordering them to pay to the plaintiff the sum of $5,000 for damages and $500 as attorney's fees. Inasmuch as the plaintiff maintains, on the other hand, that the amounts granted are insufficient, we shall discuss this error assigned by the defendants and plaintiff's appeal jointly.

The evidence shows, in addition to what we have already set forth, that on the date of the accident the plaintiff was 16 years old, that he was a strong and healthy boy and was in the sixth grade of grammar school; that due to the accident he suffered a depressed skull fracture; that when he was taken to the hospital, he was operated immediately, remaining there for about twelve days; that he received extensive treatment; that on part of the left side of the skull there is absence of bony matter and that although the place has been covered by skin any one can see, however, a dent the size of a half dollar, and notice there only soft matter; that as a consequence of the injury received the minor is completely disabled and shows epileptic syndromes, and has suffered vertigos, faints and dizzy spells, suffering, according to the expert testimony, from what is known in medicine as "petite maladie"; that the plaintiff was an advanced student and enjoyed sports; that the injury received prevents him from engaging therein; that he is unable to continue his studies or to undertake heavy work; that he is also unable to read as he used to do before the accident; and that at the

date of the trial he was still going to the hospital every two weeks for observation and treatment.

The value of the dollar, compared with the value it had before the start of the Second World War, has indeed depreciated. Its purchasing power has really decreased. Hence, compensations granted by us in latter years have been in many cases somewhat higher than in the past. *Rojas* v. *Maldonado*, 68 P.R.R. 757; *Meléndez* v. *Metro Taxicabs*, 68 P.R.R. 709; *Graniela* v. *Yolande, Inc.*, 65 P.R.R. 100. Considering the damages suffered by the plaintiff—who from a young person, studious, active, and useful to society has changed into a person who suffers frequent headaches and dizzy spells, who suffers from "petite maladie," who can never engage in active work, nor sports, who can not read, nor work—the compensation granted is unquestionably insufficient. We believe that he should be given the sum of $10,000 as damages.

Taking into consideration the kind of action involved and the entire work performed, we believe, however, that the amount of $500 granted as attorney's fees is reasonable.

The judgment appealed from will be modified as indicated, and thus modified, affirmed.